IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

MAKEDA NURRADIN,                    )
                                    )
v.                                  )        NO. 3:21-cv-00155-SRW
                                    )
TUSKEGEE UNIVERSITY,                )
                                    )
        Defendant.                  )

<u>MEMORANDUM AND ORDER</u>[1]

Plaintiff Makeda Nurradin filed this action under Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681 ("Title IX"), the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201-219 (1988) ("FLSA"), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), against Defendant Tuskegee University. (Doc. 34). Plaintiff also alleges a state law claim for breach of contract against Defendant. *Id*. Plaintiff's claims stem from allegations that Defendant subjected Plaintiff to sexual discrimination, harassment, and retaliation during her employment and her time as a student at Tuskegee, and that Defendant paid her less in wages than a male counterpart and did not pay her for all of the hours that she worked.

Before the court are Defendant's motion to dismiss (Doc. 37), Plaintiff's response (Doc. 41), and Defendant's reply (Doc. 45).[2] Defendant contends that Plaintiff was not entitled to

---

[1] On April 5, 2021, the parties consented to final dispositive jurisdiction by a Magistrate Judge pursuant to 28 U.S.C. § 636(c). (*See* Doc. 14; Doc. 15).

[2] Also before the court are Defendant Desmond Mortley's motion to dismiss (Doc. 6) and Defendant Tuskegee University's motion to dismiss (Doc. 7). On April 16, 2021, Plaintiff filed a notice voluntarily dismissing Mortley as a defendant pursuant to Fed. R. Civ. P. 41(a)(1) (Doc. 18), and also filed a motion for leave to file an amended complaint (Doc. 19). On April 21, 2021, the Clerk of Court dismissed Mortley from the case without prejudice. (Doc. 22). On June 4, 2021, the court granted Plaintiff's motion for leave to file an amended complaint (Doc. 33), and Plaintiff's amended complaint was filed on June 4, 2021 (Doc. 34). "An amended pleading supersedes the former pleading; 'the original pleading is abandoned by the amendment, and is no

overtime or minimum wage payments because the FLSA does not apply to graduate research assistants ("GRA"s); that Plaintiff's breach of contract claim is not pled with sufficient factual specificity to state a claim; that Plaintiff's Title VII claims are time-barred; that Plaintiff's Title VII claims for discrimination and retaliation based on events alleged to have occurred prior to June 17, 2020—other than the three listed in her charge filed with the Equal Employment Condition ("EEOC")—are due to be dismissed because they exceed the scope of the charge; and that Plaintiff's Title IX claims must be dismissed because they are preempted by Title VII in the area of employment discrimination. (Doc. 37, at 3, 8, 10, 11).

For the reasons set forth below, the court concludes that Defendant's motion to dismiss is due to be granted in part and denied in part.

## I.     Factual Background[3]

Tuskegee University ("Tuskegee" or "the University") in Macon County, Alabama, is an accredited Historically Black University (HBU) that is governed by its board of trustees and provides oversight through its president. (Doc. 34, at ¶¶ 12, 13). Tuskegee receives federal, state, county, and private funds for the education and welfare of its students. *Id*. at ¶ 14. In 2016, Plaintiff Makeda Nurradin earned her bachelor of science degree in environmental science from Tuskegee, and she returned to Tuskegee in May 2018 to pursue a master of science degree in that same field.

---

longer a part of the pleader's averments against his adversary.'" *Dresdner Bank AG, v. M/V Olympia Voyager*, 463 F.3d 1210, 1215 (11th Cir. 2006) (citation omitted). Thus, the amended complaint renders moot Defendants' motions to dismiss, which were based upon the claims and allegations in the original complaint that have been superseded and are no longer operative. *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1345 n.1 (11th Cir. 1999) ("An amended complaint supersedes an original complaint."). Accordingly, Defendants' motions to dismiss (Docs. 6 and 7) are due to be denied without prejudice as moot. In addition, Defendant Desmond Mortley's dismissal from this action (Doc. 22) also renders his motion (Doc. 6) moot.

[3] These facts are gleaned exclusively from the allegations in the complaint and any documents that are attached thereto or that are referenced in the complaint and central to Plaintiff's claim. They are the operative facts for the purposes of the court's ruling on the motion to dismiss.

*Id*. at ¶¶ 12, 16. Plaintiff took a position as a graduate research assistant, for which she was to work at the post-harvest center ("PHC") on campus. *Id*. at ¶ 17. According to Plaintiff, her student employment contract indicated that she was expected to work approximately 25 hours per week and would be paid $11.00 per hour. *Id*. Plaintiff kept up the agricultural facilities of the University by performing manual labor on its farm, fields, and greenhouses. *Id*. at ¶ 18. Plaintiff alleges that she was not paid a stipend and did not conduct research for a professor, and the work had nothing to do with her graduate degree. *Id*. As part of her work, Plaintiff was also expected to drive international students to the farm and around campus, and to haul fruit and vegetables from the farm in her personal vehicle. *Id*. at ¶ 19. According to Plaintiff, this work had nothing to do with conducting research for a professor or for her own graduate degree. *Id*.

Dr. Desmond Mortley was Plaintiff's graduate advisor and her direct supervisor. *Id*. at ¶ 20. Plaintiff alleges that, from the beginning of her time with Mortley through October 2019, Mortley made inappropriate sexual comments to Plaintiff, blatantly stared at her breasts and body in an offensive way, and told her that she was "a very pretty girl." *Id*. at ¶ 21. Mortley repeatedly tried to be alone with Plaintiff and became upset with her when she invited other graduate students to accompany her because she feared being alone with him. *Id*. at ¶ 22.

According to Plaintiff, she worked almost every day, including most weekend days, and although she consistently worked 40 or more hours per week, she was never paid for more than 25 hours per week. *Id*. at ¶ 23. In fact, Plaintiff was required to stay on campus to work during the Thanksgiving and Christmas holiday breaks. *Id*. at ¶ 27. Plaintiff maintains in her complaint that she worked as a GRA for 95 weeks, but that, in violation of her student contract, she was not paid at the hourly rate of $11.00 for approximately 1,571 hours. *Id*. at ¶ 26. According to Plaintiff, she is owed approximately $17,300 for unpaid work. *Id*. Plaintiff alleges that when she complained to Mortley about the extra hours, he told her that graduate students do not get a break, that they are

just supposed to work, and that hours do not matter. *Id*. at ¶ 27.

Plaintiff states that beginning in January 2019 and continuing thereafter, Sena Ahiabor, a male international student from Ghana, who was also working as a GRA under Mortley's supervision, began making inappropriate comments to Plaintiff; blatantly stared at her body in an offensive way; took pictures of her without her consent; repeatedly asked her to spend time with him socially despite her refusal of his advances; and physically grabbed her on several occasions to try to keep her from escaping his advances and inappropriate conduct. *Id*. at ¶¶ 28-29, 31, 35. In April 2019, Plaintiff reported this offensive behavior to Mortley, who said that he would address the issue with Ahiabor. *Id*. at ¶ 34. According to Plaintiff, Mortley was required under Tuskegee's codes of conduct to report Plaintiff's complaints to the university's judicial board, but Mortley did not do so. *Id*. at ¶¶ 34-35. Following her complaint to Mortley, Ahiabor's offensive behavior grew worse over time, and Mortley became more demanding, requiring Plaintiff to perform much more physically taxing labor than the other GRAs. *Id*. at ¶¶ 35-36.

In July 2019, Plaintiff observed several student employment contracts hanging on Mortley's office wall and, upon noticing that male graduate students were earning a higher wage than she, Plaintiff took pictures of Ahiabor's and her own student employment contracts with the intention of making a complaint to the university about the unequal pay. *Id*. at ¶ 37. Because Mortley did not take any action in response to her various complaints, Plaintiff met with Dr. Lily McNair, the president of Tuskegee, on October 17, 2019. *Id*. at ¶ 38. Plaintiff told McNair about her complaints concerning Ahiabor, as well as Mortley's behavior and inappropriate comments. *Id*. at ¶ 39. Plaintiff provided McNair with copies of her student employment contract and that of Ahiabor to prove the disparity in their pay, and she also shared her concerns about the display of these contracts, which contained identifying information such as each student's student ID number, home address, telephone number, and social security number. *Id*. at ¶ 40. Plaintiff asked McNair

to report Ahiabor's conduct toward Plaintiff to the judicial board, and also asked that Mortley's failure to report Plaintiff's complaints be addressed, that Plaintiff be assigned a different advisor, and that the University correct the disparity in Plaintiff's wages compared to that of international students. *Id*. at ¶ 41.

On November 3, 2019, Plaintiff memorialized her discussion with McNair in writing, again making the same request for relief. *Id*. at ¶ 44. Citing Tuskegee's student handbook, which directed that a complaint should be submitted to the office of the dean of students, Plaintiff alleges that on November 5, 2019, she submitted four separate formal, written reports to the dean, two of which pertained to Plaintiff's complaints of sexual harassment against Mortley and Ahiabor. *Id*. at ¶ 45. Kimberly M. Caesar, a judicial affairs officer, contacted Plaintiff concerning her complaints. *Id*. at ¶ 47. On November 19, 2019, Caesar sent correspondence to Plaintiff indicating that two of the cases opened in response to her complaints had been closed by the office of the dean of students and judicial affairs. *Id*. at ¶ 48.

On November 22, 2019, Plaintiff received notice from the office of the dean of students and judicial affairs informing her that because she had included Ahiabor's student employment contract with the documents submitted in support of her complaint against Mortley she was being charged with (1) conduct inappropriate for a Tuskegee University student and (2) unauthorized taking or possession of property or services of another. *Id*. at ¶ 49. Plaintiff explained that she had taken a picture of the document that was displayed publicly for the sole purpose of supporting her allegation of unequal pay and that she had no intention of disseminating the information for any other reason or to any other entity. *Id*. at ¶ 51.

In December 2019, Plaintiff learned that her tuition and work study for the 2020 Spring semester had been cut. *Id*. at ¶ 58. On December 19, 2019, Plaintiff sent correspondence to McNair alleging retaliation by the University and Mortley. *Id*. at ¶ 59. In March 2020, Plaintiff submitted

another complaint to university officials regarding Mortley's allegedly continuing harassing, intimidating, and retaliatory behavior. *Id*. at ¶ 60. On March 10, 2020, equipment which had been assigned to Plaintiff in November 2019 from Mortley's lab for her use to collect data to support and complete her master's thesis was removed by Mortley from the university's lab, without notice to Plaintiff. *Id*. at ¶¶ 43, 61. Removal of the equipment allegedly had the potential to compromise Plaintiff's entire thesis, and by extension, her academic career. *Id*. On March 12, 2020, after Plaintiff reported Mortley's actions to university officials, along with their potential ramifications, the equipment was returned to Plaintiff so she could review and retrieve the data it contained. *Id*. at ¶ 62. Plaintiff returned the equipment to the university on March 20, 2020. *Id*. at ¶ 63.

On March 19, 2020, Tuskegee's Title IX office sent correspondence to Ahiabor directing him to avoid all contact with Plaintiff until further notice, and indicating that failure to comply would result in disciplinary action. *Id*. at ¶ 64. Defendant Ahiabor was allowed to continue attending the university. *Id*. at ¶ 66. Plaintiff alleges that Tuskegee's failure to supervise, discipline, suspend, or expel Ahiabor violated the university's own policies and procedures regarding the protection of its students from harassment, intimidation, and sexual assault, and that these failures also violated Title IX. *Id*. at ¶ 68. Plaintiff maintains that, although a hearing was held in January of 2020 regarding her claims of sexual harassment by Ahiabor, Plaintiff was given insufficient notice of the hearing and otherwise prevented from providing evidence to support her case. *Id*. at ¶ 70.

Lastly, Plaintiff alleges that in the fall of 2020, Tuskegee retaliated against her for her complaints of unequal pay, sexual harassment, and retaliation by removing her from the student rolls, claiming that she had not made payments toward her tuition. *Id*. at ¶ 71. According to Plaintiff, although she sent proof that she had an agreement and had made payments, Tuskegee refused to reinstate her until after several months had passed. *Id*.

## II.      Legal Standard

To survive a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the plaintiff must allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp., v. Twombly,* 550 U.S. 544, 570 (2007). The standard for a motion to dismiss under Rule 12(b)(6) was explained in *Twombly,* and refined in *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), as follows:

> Two working principles underlie our decision in *Twombly.* First, the tenet that a court must accept as true all the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.  Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief.

*Iqbal,* 556 U.S. at 678-79 (citations and internal edits omitted).

The *Twombly-Iqbal* two-step analysis begins "by identifying the allegations in the complaint that are not entitled to the assumption of truth" because they are conclusory.  *Id.* at 680; *Mamani v. Berzain,* 654 F. 3d 1148, 1153 (11th Cir. 2011) ("Following the Supreme Court's approach in *Iqbal,* we begin by identifying conclusory allegations in the Complaint."). After conclusory statements are set aside, the *Twombly-Iqbal* analysis requires the Court to assume the veracity of well-pleaded factual allegations, and then to determine whether they "possess enough heft to set forth 'a plausible entitlement to relief.'" *Mack v. City of High Springs,* 486 F. App'x 3, 6 (11th Cir. 2012) (citation omitted.)  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face' … that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Iqbal*, 556 U.S. at 678 (citations omitted). Establishing facial plausibility, however, requires more than stating facts that establish mere possibility. *Mamani,* 654 F. 3d at 1156 ("The possibility that – *if* even a possibility has been alleged effectively – these defendants acted unlawfully is not enough for a plausible claim.") (emphasis in original). Plaintiffs are required to "allege more by way of factual content to nudge [their] claim[s] … across the line from conceivable to plausible." *Iqbal,* 556 U.S. at 683 (internal editing and citation omitted.).

In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice. *See Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000); *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (A "court may consider a document attached to a motion to dismiss . . . if the attached document is (1) central to the plaintiff's claim and (2) undisputed. In this context, 'undisputed' means that the authenticity of the document is not challenged. . . . [A] document need not be physically attached to a pleading to be incorporated by reference into it; if the document's contents are alleged in a complaint and no party questions those contents, we may consider such a document provided it meets the centrality requirement[.]") (citation omitted); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). In considering a motion to dismiss, this court accepts all of the allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Moreover, the court "presume[s] that general allegations embrace those specific facts that are necessary to support the claim." *Nat'l Org. for Women v. Scheidler*, 510 U.S. 249, 256 (1994) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). The court need not, however, accept legal conclusions couched in the form of factual allegations. *See Diverse Power, Inc. v. City of LaGrange, Georgia*, 934 F.3d 1270, 1273 (11th Cir. 2019) (citing *Twombly*, 550 U.S. at 555).

**III.    Discussion[4]**

**A.    FLSA Claim**

Defendant contends that Plaintiff is not entitled to overtime or minimum wage payments because the FLSA does not apply to GRAs, as GRAs are exempt from minimum wage and overtime pay under the FLSA. (Doc. 37, at 3).[5] Plaintiff argues that there is not a GRA exemption under the FLSA and that she has sufficiently pled that she was an "employee" under the FLSA who is entitled to overtime compensation and minimum wage. (Doc. 41, at 20).

"The FLSA was enacted in 1938 in order to eliminate 'labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers....'" *Antenor v. D & S Farms*, 88 F.3d 925, 929 (11th Cir. 1996) (quoting 29 U.S.C. § 202(a), (b)). "To those ends, 29 U.S.C. § 207 requires that employers pay time and a half for those hours that an employee works in excess of the standard forty hour work week." *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1156 (11th Cir. 2008) (citing 29 U.S.C. § 207(a)(1)). Thus, "[a]ll that the FLSA requires is that an employee be paid at least the minimum wage for all hours worked, and if no exemption applies, overtime pay for each hour in excess of the statutory minimum." *Bolick v. Brevard Cty. Sheriff's Dep't*, 937 F. Supp. 1560, 1568 (M.D. Fla. 1996) *see* 29 C.F.R. § 541.2 ("A job title alone is insufficient to establish the exempt status of an employee. The exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements of the regulations in this part.")

Section 213 of the FLSA provides exemptions to the FLSA's minimum wage and

---

[4] The court addresses the challenges to Plaintiff's claims in the order that they are discussed in the parties' briefs.

[5] Unless otherwise stated, citations are to the Court's ecf pagination. References to actual transcript or exhibit pages are denoted with a "p."

maximum hour requirements. 29 U.S.C. § 213. The FLSA's minimum wage and overtime wage requirements do not apply to "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). "[E]xemptions 'are to be construed narrowly,' and the employer shoulders the burden of establishing that it is entitled to an exemption." *Alvarez Perez*, 515 F.3d at 1156 (citation omitted); *Friedman v. S. Fla. Psychiatric Assocs., Inc.*, 139 F. App'x 183, 185 (11th Cir. 2005) ("'We construe overtime exemptions narrowly, against the employer.'") (quoting *Avery v. City of Talladega, Ala.*, 24 F.3d 1337, 1340 (11th Cir.1994)). The employer must prove "the applicability of a FLSA exception by 'clear and affirmative evidence.'" *Klinedinst v. Swift Invs., Inc.*, 260 F.3d 1251, 1254 (11th Cir. 2001) (citation and internal quotation marks omitted).

"The protections the FLSA affords . . . extend to 'employees' only. As a result, only individuals falling within the Act's definition of 'employee' are entitled to minimum wages and overtime." *Schumann v. Collier Anesthesia, P.A.*, 803 F.3d 1199, 1207 (11th Cir. 2015). An "employee" is "any individual employed by an employer," and an "employer" "includes any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d), (e)(1). The term "employ" "includes to suffer or permit to work." *Id.*, § 203(g). "These definitions are intended to be 'comprehensive enough' to include 'working relationships, which prior to [the FLSA], were not deemed to fall within an employer-employee category.'" *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1311 (11th Cir. 2013) (citations omitted). However, the terms "employee," "employer," and "employ" "cannot be interpreted so as to make a person whose work serves only his own interest an employee of another person who gives him aid and instruction." *Walling v. Portland Terminal Co.*, 330 U.S. 148, 152 (1947); *Schumann*, 803 F.3d at 1208. "As the Supreme Court has cautioned, the FLSA was 'not intended to stamp all persons as employees who, without any express or implied compensation agreement, might work

for their own advantage on the promises of another. Otherwise, all students would be employees of the school or college they attended, and as such entitled to receive minimum wages.'" *Schumann*, 803 F.3d at 1208 (citation omitted). "The rulings, interpretations and opinions of the [Department of Labor's Wage and Hour] Administrator under [the FLSA], while not controlling upon courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Kaplan v. Code Blue Billing & Coding, Inc.*, 504 F. App'x 831, 834-35 (11th Cir. 2013); *Ash v. Sambodromo*, LLC, 676 F. Supp. 2d 1360, 1367 n.10 (S.D. Fla. 2009) ("Though not binding on the Court, the [Department of Labor's Field Operations] Handbook is a persuasive authority.").

Citing 29 C.F.R. § 541.204(b), Defendant argues that the exemption of GRAs from the FLSA applies to "educational establishments," which includes institutions of "higher education," and that Plaintiff therefore, as a matter of law, is not entitled to overtime or minimum wage payments. (Doc. 37, at 3). Defendant cites Chapter 10 of the Field Operations Handbook for the United States Department of Labor ("DOL") entitled, "FLSA Coverage: Employment Relationship, Statutory Exclusions, Geographical Limits," which reads, as follows:

> **Graduate students: research assistants.**
>
> In some cases graduate students in colleges and universities are engaged in research in the course of obtaining advanced degrees and the research is performed under the supervision of a member of the faculty in a research environment provided by the institution under a grant or contract. Normally, the graduate students involved in these programs are simultaneously performing research under the grants or contracts and fulfilling the requirements of an advanced degree. Under such circumstances the WHD [Wage and Hour Division] will not assert an employer-employee relationship between the students and the school, or between the student and the grantor or contracting agency, even though the student receives a stipend for their services under the grant or contract.

U.S. Dept. of Labor, Field Operations Handbook Ch. 10b18 (Mar. 31, 2016) (available at https://www.dol.gov/agencies/whd/field-operations-handbook/Chapter-10#B10b18).

Additionally, Defendant maintains that GRAs are exempt from the FLSA under the

11

graduate research exemption, citing the DOL's "Fact Sheet #17s: Higher Education Institutions and Overtime Pay Under the Fair Labor Standards Act (FLSA)" regarding "student-employees," which states, in part, the following:

> **Research Assistants.** Generally, an educational relationship exists when a graduate or undergraduate student performs research under a faculty member's supervision while obtaining a degree. Under these circumstances, the Department would not assert that an employment relationship exists with either the school or any grantor funding the student's research. This is true even though the student may receive a stipend for performing the research.

https://www.dol.gov/sites/dolgov/files/WHD/legacy/files/whdfs17s.pdf.[6]

In response, Plaintiff argues that "there is a limited exemption for employees of an educational institution that actually qualify as administrative employees of the university who are paid a salary and do work that directly relates to academic instruction or training." (Doc. 41, at 21). Plaintiff points to § 541.204(a), which provides that the term "employee employed in a bona fide administrative capacity" includes employees who must meet both of the following criteria:

> (1) Compensated on a salary or fee basis pursuant to § 541.600 at a rate per week of not less than the 40th percentile of weekly earnings of full-time nonhourly workers in the lowest-wage Census Region (or 84 percent of that amount per week, if employed in American Samoa by employers other than the Federal government), exclusive of board, lodging or other facilities; or on a salary basis which is at least equal to the entrance salary for teachers in the educational establishment by which employed. Beginning January 1, 2020, and every three years thereafter, the Secretary shall update the required salary amount pursuant to § 541.607; and

> (2) Whose primary duty is performing administrative functions directly related to academic instruction or training in an educational establishment or department or subdivision thereof.

29 C.F.R. § 541.204(a). Plaintiff contends that her allegations, as pled, do not meet either requirement to be an exempt administrative employee of Tuskegee, as she was paid merely by the

---

[6] The court notes that the Department of Labor revised the regulations located at 29 C.F.R. Part 541 with an effective date of January 1, 2020, and that the WHD continued to enforce the 2004 Part 541 regulations through December 31, 2019. Plaintiff's factual allegations giving rise to her FLSA claim took place in 2018 and 2019, prior to the effective date of any changes in 29 C.F.R. Part 541. *See* https://www.dol.gov/sites/dolgov/files/WHD/legacy/files/whdfs17s.pdf.

hour and she did manual labor on Tuskegee's farm and transported graduate students—duties that were unrelated to research for a professor or her own graduate education. (Doc. 41, at 21-22). Plaintiff maintains that Chapter 10 of the Field Handbook's provision relating to when a student research assistant may not be considered an "employee," as worded, does not apply to her job as described in her complaint. *Id*. at 24.

As to the DOL's Fact Sheet # 17S, Plaintiff contends that, read in its entirety, Fact Sheet # 17S actually supports her "position that she was a non-administrative school employee who was paid an hourly rate by the University to do non-exempt manual labor" and that it "does not support the existence of a blanket exemption for all students with the title 'graduate research assistants' regardless of their pay or duties." *Id*. In support of her argument, Plaintiff cites to the introductory paragraph in Fact Sheet # 17S, omitted by Defendant, which states that, "*As a general matter*, *most students* who work for their college or university are hourly non-exempt workers and do not work more than 40 hours per week. The following, however, are *examples* of students *who often receive a salary or other non-hourly compensation*: . . . Research Assistants." *Id*. at 25 (emphasis added).[7] The Fact Sheet also states that "[a]n employment relationship will generally exist when a student receives compensation and his or her duties are not part of an overall educational program."[8] Plaintiff argues that her complaint, "as pled, meets this requirement but was required to work more than 40 hours per week with no compensation, overtime or otherwise and is therefore not exempt as an administrative employee of the University." *Id*. Plaintiff further argues that the DOL guidance, on its face, "does not support the Defendant Tuskegee's position that the Plaintiff was exempt merely because she was employed as a Graduate Research Assistant." *Id*. Plaintiff maintains that she "was an employee and not exempt because she was paid an hourly rate of $11.00

---

[7] *See* https://www.dol.gov/sites/dolgov/files/WHD/legacy/files/whdfs17s.pdf.

[8] *See id*.

per hour (not a stipend or salary) and did manual labor that was unrelated to any research or her personal graduate degree." *Id*. at 26.

In its reply, Defendant argues that the United States Department of Labor ("DOL") lists other exemptions in 29 C.F.R. Part 541, including exemptions for research students. (Doc. 45, at 2-3). In addition to citing again to Chapter 10b18 of the DOL Handbook and Fact Sheet # 17S, Defendant also cites to DOL Handbook Chapter 10b03(i), pertaining to "Religious, charitable, and nonprofit organizations, schools institutions, volunteer workers, members of religious orders," which states as follows:

(i)     The conditions under which an employment relationship initially will not be asserted are:

(1)     The activities are basically educational, are conducted primarily for the benefit of the participants, and comprise one of the facets of the educational opportunities provided to the students.  The student may receive some payment for their work in order to have a more realistic work situation, or as an incentive to the student or to insure that the employer will treat the student as a worker.

(2)     The time in attendance at the school plus the time in attendance at the experience station (either in the school or with an outside employer) does not substantially exceed the time the student would be required to attend school if following a normal academic schedule. Time in excess of 1 hour beyond the normal school schedule or attendance at the experience station on days when school is not in session would be considered substantial.

(3)     The student does not displace a regular employee or impair the employment opportunities of others by performing work which would otherwise be performed by regular employees who would be employed by the school or an independent contractor including, for example, employees of a contractor operating the food service facilities at the school.

https://www.dol.gov/agencies/whd/field-operations-handbook/Chapter-10#B10b03

Defendant argues that, "[b]ased on the FLSA's provisions and the allegations of the amended complaint that unequivocally state that the plaintiff was a graduate research assistant, she was not subject to the wage and overtime provisions—or any provisions—of the FLSA." (Doc. 45, at 5). Defendant maintains that "[t]he statement that Plaintiff's Graduate Research Assistant

research was not a part of her graduate program is unsupported by any facts alleged in the amended complaint and is pure speculation." *Id*. at 6. Defendant asserts that Plaintiff's "graduate program was part of the College of Agriculture, Environment, and Nutrition Science (CAENS) and specifically the Department of Agricultural & Environmental Sciences (DAES)." *Id*. Defendant argues that "[n]aturally, her studies and graduate research assistant responsibilities included topics and work related to the environmental effects of farming and agricultural practices," and concludes that "[t]herefore, the tasks described by Plaintiff in her amended complaint, which included agricultural and farming activities, were in fact research-related and related to her major." *Id*.

In her amended complaint, Plaintiff alleges (1) that she received her bachelor of science in environmental science and in May 2018 returned to Tuskegee to pursue a master of science degree in that same field; (2) that she took a position as a GRA where she was to work at the PHC on campus; (3) that her student employment contract indicated that she would be expected to work approximately 25 hours per week and would be paid $11.00 per hour; (4) that she worked doing manual labor on the farm, in fields, and in greenhouses, keeping up the agricultural facilities of the university; (5) that she was not paid a stipend and did not conduct research for a professor; (6) that the work she did had had nothing to do with her graduate degree; (7) that she was expected to drive international students to the farm and around campus, and to haul fruit and vegetables from the farm in her personal vehicle, and that this work had nothing to do with conducting research for a professor or her own graduate degree; (8) that she met with Mortley through October 2019; (9) that she consistently worked 40 or more hours per week, including most weekend days, and was never paid for more than 25 hours per week; (10) that Defendant breached Plaintiff's contract by requiring her to work more than 25 hours per week and not paying her for any additional hours worked; and (11) that for the 95 weeks that she worked as a GRA at PHC, she was not paid her regular, hourly rate of $11.00 for approximately 1,571 hours, in violation of her contract. (Doc.

15

34, at ¶¶ 16-19, 21, 23, 25-26).

In considering Defendant's motion to dismiss, this court accepts all of the allegations in the complaint as true and construes them in the light most favorable to Plaintiff. *Pielage*, 516 F.3d at 1284. The court finds that Plaintiff has sufficiently pled that she was an hourly, non-exempt employee of the Defendant and was not exempt under any applicable exemption under the FLSA from 2018 to 2019. Defendant argues that "[n]aturally, her studies and graduate research assistant responsibilities included topics and work related to the environmental effects of farming and agricultural practices," and maintains that "[t]herefore, the tasks described by Plaintiff in her amended complaint, which included agricultural and farming activities, were in fact research-related and related to her major." (Doc. 45, at 6). However, whether Plaintiff in 2018 and 2019 was an employee of Defendant or was exempt is a factual issue that would be more appropriately addressed in a motion for summary judgment based on then-existing regulations and their interpretations. As of now, the court does not, for example, know the terms of Plaintiff's contract, whether Plaintiff's payment was based upon a grant, or whether her work was in fact related to her graduate degree. The court cannot say, based solely upon the pleadings, that Plaintiff was exempt from the FLSA in 2018 to 2019 as a matter of law. Exemptions are to be construed narrowly, and Defendant bears the burden of proving an exemption by clear and affirmative evidence. *Alvarez Perez*, 515 F.3d at 1156; *Friedman*, 139 F. App'x at 185; *Klinedinst*, 260 F.3d at 1254. Here, on the motion to dismiss, Defendant has not carried this burden. *Summa v. Hofstra Univ.*, 715 F. Supp. 2d 378 (E.D.N.Y. 2010) (including university graduate research assistant in FLSA plaintiff class because the defendant university had the burden of showing that each student/employee was exempt under the FLSA and could attempt to do so by motion for summary judgment).

## B.    Breach of Contract Claim

Defendant argues that Plaintiff's breach of contract claim is not pled with sufficient factual

specificity for it to understand the allegations in the amended complaint. (Doc.37 at 8). Defendant contends that Plaintiff did not attach a copy of the contract to her amended complaint or state the effective date of the contract or the date or dates of the breach or allege a "single term" of her contract that she alleges was breached. *Id*. at 6. Defendant maintains that, as a matter of law, Plaintiff was not entitled to receive to receive minimum wage and overtime payments because she was not an employee under the FLSA and therefore is not entitled to recover them. *Id*. at 7.

No Federal Rule of Civil Procedure requires a copy of the contract to be attached to a complaint alleging a breach of contract claim. *Long v. Touizer*, No. 1:18-CV-62770, 2021 WL 515389, at *5 (S.D. Fla. Feb. 11, 2021); *Yencarelli v. USAA Cas. Ins. Co.*, No. 8:17-CV-2029-T-36AEP, 2017 WL 6559999, at *2 (M.D. Fla. Dec. 22, 2017) ("It is adequate for Plaintiff to allege that a contract exists, without attaching the contract to the complaint in federal court."); *Grayson Inc. v. Glob. Payments Direct, Inc.*, No. 13-CV-1256, 2013 WL 5719087, at *3 (N.D. Ala. Oct. 18, 2013) ("No federal rule requires a party asserting breach of contract to attach the contract."). Rule 8(a) of the Federal Rules of Civil Procedure requires only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," with "a demand for the relief sought" and contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citation omitted).

"The elements of a breach-of-contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Reynolds Metals Co. v. Hill*, 825 So. 2d 100, 105 (Ala. 2002). Here, the amended complaint alleges, among other things, that Plaintiff had a contract with Defendant Tuskegee; that she was expected to work approximately 25 hours per week and would be paid $11.00 per hour; that Defendant breached the contract by requiring her to work more than 25 hours per week and not compensating her for the extra hours worked; and that she is

owed approximately $17,300. (Doc. 34, at ¶¶ 17, 25-26, 101-103).

Based upon the foregoing, the court concludes that Plaintiff has pled a plausible claim for breach of contract sufficiently to survive Defendant's motion to dismiss. Defendant will have the opportunity to dispute Plaintiff's factual allegations and evidence, after completion of discovery, in a motion for summary judgment.

C.     **Title VII Claims**

Plaintiff alleges in her amended complaint that Defendant discriminated against her and subjected her to a hostile work environment because of her sex and that Defendant retaliated against her for complaining about harassment and discrimination in violation of Title VII. (Doc. 34, at ¶¶ 92, 95). Defendant contends that Plaintiff's Title VII claims are time-barred due to her failure to file a charge with the EEOC within 180 days of any identified, objectionable act. (Doc. 37, at 8). Plaintiff responds that the EEOC charge was, on its face, timely filed as to her claims of hostile environment and sexual harassment and retaliation by the university. (Doc. 41, at 28).

Pursuant to Title VII, an employee alleging discrimination must exhaust his administrative remedies before bringing a civil complaint in federal court. 42 U.S.C. § 2000e-5(e)(1). A plaintiff must first file a charge with the EEOC within 180 days after the alleged improper employment action. *See* 42 U.S.C. § 2000e-(5)(e)(1); *Shi v. Montgomery*, 679 F. App'x 828, 831 (11th Cir. 2017) ("Alabama is a non-deferral state. For a charge to be timely in non-deferral states, it must be filed within 180 days of the last discriminatory act.") (internal citations omitted).[9] Upon his or her filing a charge, the EEOC investigates the employer's alleged discriminatory practice. 42 U.S.C. § 2000e-5(b).

---

[9] "In 'deferral' states—those states that have an EEOC-like state administrative agency—a charge of discrimination must first be filed with the state agency, and the filing period is extended to 300 days." *Ledbetter v. Goodyear Tire & Rubber Co.*, 421 F.3d 1169, 1178 n.13 (11th Cir. 2005), *aff'd*, 550 U.S. 618 (2007), *overturned due to legislative action* (Jan. 29, 2009).

A civil action can be brought only after the EEOC has notified the plaintiff of its decision to dismiss the charges. 42 U.S.C. § 2000e-5(e)(1). An employee must completely exhaust the administrative remedies available from the EEOC before filing suit in federal court. *See Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 459 (5th Cir. 1970).[10] "This administrative prerequisite triggers the EEOC's investigation and conciliatory procedures and puts the employer on notice of the allegations against it." *Collier v. Harland Clarke Corp.*, 379 F. Supp. 3d 1191, 1208 (N.D. Ala. 2019), *aff'd*, 820 F. App'x 874 (11th Cir. 2020). As a general rule, a plaintiff cannot bring a lawsuit on a claim that was not included in his or her EEOC charge. *Zellars v. Liberty Nat. Life Ins. Co.*, 907 F. Supp. 355, 358 (M.D. Ala. 1995) (citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974)). The scope of an employment discrimination complaint is determined by the EEOC charge and investigation. *See Gregory v. Georgia Dep't of Human Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004).

A plaintiff is barred from pursuing any claim in a federal court action that is not "like or related" to the claims asserted by the plaintiff in her EEOC charge, or that could not reasonably be expected to arise during the course of the EEOC investigation. *See Sanchez*, 431 F.2d at 466-67. Therefore, additional charges in a civil complaint, or in a second EEOC charge, which do not arise naturally and logically from the facts presented to the EEOC are not related to the original charge, and cannot be pursued in federal court. *See Gregory*, 355 F.3d at 1279-80 ("This Court . . . has noted that judicial claims are allowed if they 'amplify, clarify, or more clearly focus' the allegations in the EEOC complaint, but has cautioned that allegations of new acts of discrimination are inappropriate.").

---

[10] *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (holding that decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981, are binding in the Eleventh Circuit).

On June 17, 2020, Plaintiff filed her charge of discrimination with the EEOC.[11] In her EEOC charge, Plaintiff cited the following incidents—some with specific dates on which the alleged incident occurred:

1. In May 2018, she enrolled at Tuskegee to pursue a graduate degree and worked as a graduate research assistant.

2. In fall 2018, Mortley began to say sexually inappropriate things to her.

3. In January 2019, Ahiabor, an international student, began attending classes, worked as a graduate research assistant, and began "saying sexually inappropriate things" to her and on more than one occasion physically restrained her when she tried to get away from his unwelcome advances by standing in front of her car and beating on her car windows.

4. In April 2019, she met with Mortley to tell him about Ahiabor's advances; Mortley stated that he would speak to him, but Ahiabor's "advances seemed to get worse."

5. In October 2019, Mortley displayed employment contracts on the wall, and Plaintiff noticed that Ahiabor was earning a higher wage than she was.

6. In October 2019, Plaintiff contacted the university president, raising concerns about the alleged "unfair wage practices and the sexually inappropriate behavior of Dr. Mottley and of Sena Ahiabor." After this meeting, Plaintiff submitted

---

[11] In its motion to dismiss, Defendant states that Plaintiff's EEOC charge was filed on June 17, 2020. (Doc. 37, at 9). However, Plaintiff maintains, without elaboration, that her charge was filed on May 18, 2020. (Doc. 41, at 28). Plaintiff's EEOC charge, attached to the amended complaint, reflects that, although Plaintiff signed it on May 12, 2020, the EEOC received it on June 17, 2020. (Doc. 34, at 29). A charge is deemed "filed" when the EEOC receives it. *See* 29 C.F.R. § 1601.13(a); *see also Taylor v. General Telephone Co. of Southwest*, 759 F.2d 437, 441-42 (5th Cir. 1985). Thus, the EEOC charge was filed on June 17, 2020. However, as discussed *infra*, even if May 18, 2020 were the operative date of filing, Plaintiff's Title VII claims would still be time-barred.

information to the office of the dean of students, but she was informed by the office

that she was being charged with theft for the taking of Ahiabor's contract.

7. Nothing was done regarding Dr. Mortley, and his inappropriate behavior

"continued."

(Doc. 34, at 30-31). Plaintiff concluded by stating that she believed that she was being

discriminated against because of her sex because she was "being paid less than at least one other

similarly situated male." *Id*. at 31. Plaintiff also stated that she believed that she was being

retaliated against for reporting sexual misconduct to university officials regarding a fellow

graduate student and her academic supervisor. *Id*. The EEOC closed its file on Plaintiff's charge,

finding that her "charge was not timely filed with the EEOC; in other words, [she] waited too long

after the date (as) of the alleged discrimination to file [her] charge." *Id*. at 33.

Upon review of Plaintiff's EEOC charge, the court finds that Plaintiff did not identify a

date on which one adverse act, relating to a Title VII claim, occurred within 180 days of June 17,

2020—the date of filing of her EEOC charge. Plaintiff cites only acts which occurred in 2018 and

2019. There is also no allegation in her EEOC charge that Mortley retaliated against her. The only

"inappropriate behavior" described in the charge concerning Mortley was that "Dr. Mortley began

to say sexually inappropriate things to me during the fall semester of 2018." (Doc. 34, at 30).

Plaintiff argues that the EEOC charge indicated that the discrimination and harassment

were "ongoing," as it stated that "[n]othing was done regarding Dr. Mortley, and his inappropriate

behavior 'continued.'" (Doc. 41, at 29; Doc. 34, at 31). "Federal courts historically have applied

the continuing-violation doctrine to permit a plaintiff to recover on an otherwise time-barred claim,

where at least one of the violations she alleges occurred within the statutory limitations period."

*Abram v. Fulton Cty. Gov't*, 598 F. App'x 672, 674 (11th Cir. 2015). However, the Eleventh

Circuit has concluded that the Supreme Court "clarified that 42 U.S.C. § 2000e-5(e)(1) precludes

recovery under the continuing-violations doctrine for discrete acts of discrimination or retaliation that occurred outside the statutory limitations period," and determined that the Supreme Court "explained that each discrete discriminatory act starts a new clock for filing an EEOC charge alleging that act; and time-barred acts are not actionable, even if they are related to acts alleged in a timely-filed charge." *Id*. at 674-75 (citations omitted). Yet, where a "plaintiff raises a hostile-work-environment claim, § 2000e-5(e)(1) permits recovery for acts that occurred outside the statutory limitations period, as long as at least one act contributing to the hostile work environment took place within the limitations period." *Id*. at 675; *Stewart v. Jones Util. & Contracting Co. Inc.*, 806 F. App'x 738, 741 (11th Cir. 2020) ("We have concluded that the Supreme Court[] … 'essentially rejected the continuing violation doctrine and simplified the law by allowing courts to view allegations of a hostile work environment as a single unlawful employment practice.' We reasoned that if the smallest portion of that 'practice' occurred within the limitations period, then a court should consider it as a whole.") (citations omitted).

Here, Plaintiff did not allege in her EEOC charge a discrete discriminatory act that occurred within the statutory limitations period. Plaintiff stated vaguely in her EEOC charge that Mortley's behavior "continued," but did not indicate how or when any additional conduct took place.[12]

---

[12] Although courts liberally construe EEOC charges that are prepared without the assistance of counsel, plaintiffs who are represented by counsel at the time the EEOC charge is filed are not entitled to liberal construction. *Jerome v. Marriott Residence Inn Barcelo Crestline/AIG*, 211 F. App'x 844, 846 (11th Cir. 2006) ("Although we liberally construe EEOC charges that are prepared without the assistance of counsel, "a plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."); *McWhorter v. Nucor Steel Birmingham Inc.*, 304 F. Supp. 3d 1185, 1192 (N.D. Ala. 2018) ("Plaintiff is not entitled to such a liberal construction because he was represented by counsel at the time he filed the charge."); *Davis v. Infinity Ins. Co.*, No. 2:15-cv-01111, 2017 WL 4224588 at *8 (N.D. Ala. Sept. 22, 2017) (declining to broadly interpret an EEOC charge because it was "not a situation where the unexhausted claim [was] the result of an unrepresented plaintiff filing an EEOC charge"). Although this fact is not determinative, the court notes that the dismissal and notice of rights form was mailed to Plaintiff's attorneys, indicating that Plaintiff was represented at the EEOC level. (Doc. 34, at 33). Plaintiff does not allege that she filed her EEOC charge *pro se*.

Plaintiff further argues that her amended complaint "makes it perfectly clear that the retaliatory charges against the Plaintiff were still pending in December of 2019 (and in fact remain pending) and the harassing and retaliatory behavior resulted in another complaint by the Plaintiff in March of 2020, well within the 180 days preceding the Plaintiff's filing of her Charge of Discrimination." (Doc. 41, at 29). However, the alleged retaliatory conduct in March 2020 would have constituted a discrete act of retaliation that Plaintiff had knowledge of and was required to include in her EEOC charge. This alleged retaliatory conduct did not occur after her charge was filed, but, according to Plaintiff, occurred *before* her charge was filed. Thus, Plaintiff was required to present it first to the EEOC before bringing it before the court. *Thomas v. Miami Dade Pub. Health Tr.*, 369 F. App'x 19, 22-23 (11th Cir. 2010) ("any . . . acts of retaliation that occurred prior to the date of the EEOC charge that were not included in the charge were not exhausted and could not be considered by the district court.").[13]

---

[13] In her response, Plaintiff does not cite any other specific instances of retaliatory conduct following her filing of her EEOC charge, nor does she specifically allege that she was retaliated against for filing an EEOC charge. However, although neither party mentions it, the amended complaint alleges that, at an unspecified time in the fall of 2020, the university retaliated against Plaintiff for her complaints of unequal pay, sexual harassment, and retaliation by removing her from the student rolls, claiming she had not made payments for her tuition, and that the university refused to reinstate her until after several months had passed. (Doc. 34, at ¶ 71). The purpose of the exhaustion requirement is so that the EEOC "'should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts.'" *Gregory*, 355 F.3d at 1279 (citation omitted). Thus, "a 'plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" *Id*. at 1280 (citation omitted). "It is unnecessary for a plaintiff to exhaust administrative remedies prior to filing a judicial claim of retaliation if that claim grew 'out of an earlier charge,' because the 'the district court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the court.'" *Duble v. FedEx Ground Package Sys., Inc.*, 572 F. App'x 889, 892 (11th Cir. 2014) (citations omitted). However, this exception "does not apply, when no other properly raised judicial claim exists to which the retaliation claim may attach." *Id*. at 892-93. Here, Plaintiff's claim of retaliatory conduct in fall 2020 relates to a discrete act that occurred after she filed her initial charge. Plaintiff's EEOC claim was still pending and was not denied until January 12, 2021. (Doc. 34, at 33). Plaintiff had 90 days thereafter to file her lawsuit, which she did on February 22, 2021. (Doc. 1). Plaintiff had the opportunity to amend her EEOC charge or file a new

Accordingly, because Plaintiff did not file an EEOC charge within 180 days of the alleged discriminatory conduct, Plaintiff's Title VII claims are time-barred and are due to be dismissed for failure to exhaust administrative remedies.

### D.    Title IX Claim

The amended complaint alleges that the Defendant was on actual notice of sexual harassment of the Plaintiff by both Ahiabor and Mortley, as well as Mortley's retaliatory conduct, and did nothing to stop the sexually harassing behavior in violation of Title IX. (Doc. 34, at ¶¶ 78-80). Plaintiff also alleges that Defendant retaliated against her for her complaints of sexual harassment and retaliation *Id*. at ¶¶ 81-83. Plaintiff maintains that based upon Defendant's actions and inactions she was deprived of educational opportunities enjoyed by her male colleague—that is, the right to attend public school on a daily basis without the fear, embarrassment, intimidation, and mental anguish associated with sexual assault and sexual harassment. *Id*. at ¶¶ 87-89. Plaintiff

---

charge relating to this conduct. Therefore, Plaintiff failed to exhaust her administrative remedies regarding this retaliation claim. *See Duble*, 572 F. App'x at 892-93; *Ketring v. Auburn Univ.*, No. 3:18-CV-619, 2019 WL 3825333, at *2 (M.D. Ala. Aug. 15, 2019); *Caldwell v. State of Alabama Dep't of Corrections*, No. 2:14-cv-25, 2016 WL 3647976, *2 (M.D. Ala. Jul. 7, 2016) (dismissing retaliation claim where it occurred after plaintiff filed her initial EEOC charge but plaintiff had ample time to amend or file a new charge before filing suit but did not do so); *Robinson v. Koch Foods of Alabama*, No. 2:13-CV-557, 2014 WL 4472611, at *2 (M.D. Ala. Sept. 11, 2014); *see also Hargett v. Valley Fed. Sav. Bank*, 60 F.3d 754, 761-62 (11th Cir.1995) (agreeing that the district court properly dismissed an unexhausted retaliation claim because no other discrimination charges were properly presented to the district court) (citing *Barrow v. New Orleans S.S. Ass'n*, 932 F.2d 473, 479 (5th Cir. 1991) ("Because one of the ADEA charges was untimely and the other was not presented first to the EEOC, they were not 'properly' before the district court. Thus the retaliation charge has no charge on which to attach itself, and the district court correctly dismissed it.")); *Basel v. Sec'y of Def.*, 507 F. App'x 873, 876 (11th Cir. 2013) (citing *Hargett*); *Tillbery v. Kent Island Yacht Club, Inc.*, No. CIV.CCB-09-2956, 2010 WL 2292499, at *6 (D. Md. June 4, 2010), *aff'd*, 461 F. App'x 288 (4th Cir. 2012) ("[W]here a discrimination charge is dismissed as untimely, a retaliation claim must also be dismissed because it has 'no charge on which to attach itself'. Because Ms. Tillbery's EEOC charge is not properly before the court, her retaliation claim has no charge on which to attach itself and must also be dismissed for failure to exhaust administrative remedies.") (citation omitted).

further alleges, without specifics, that she has been substantially hampered from completing her masters' degree. *Id*. at ¶ 90.

In its motion to dismiss, Defendant contends that Title VII preempts Title IX in the area of employment discrimination and that Plaintiff's Title IX claim is due to be dismissed. (Doc. 37, at 11). In her response, Plaintiff argues that Title VII does not preempt her Title IX Claim because Plaintiff was not only an employee of Tuskegee, she was also a graduate student. (Doc. 41, at 32).

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C § 1681(a). "Title IX prohibits sex discrimination by recipients of federal education funding." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005). The Supreme Court has "held that Title IX implies a private right of action ... [and] that it authorizes private parties to seek monetary damages for intentional violations of Title IX." *Id*. (citation omitted). "[S]exual harassment is a form of discrimination for Title IX purposes." *Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 649-50 (1999). Damages and injunctive relief are available under Title IX. *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 255 (2009). "[Title IX's] broad directive that 'no person' may be discriminated against on the basis of gender appears, on its face, to include employees as well as students." *N. Haven Bd. of Ed. v. Bell*, 456 U.S. 512, 520 (1982).

In *Heatherly v. Univ. of Alabama Bd. of Trustees*, No. 7:16-CV-00275-RDP, 2018 WL 3439341 (N.D. Ala. July 17, 2018), *aff'd*, 778 F. App'x 690 (11th Cir. 2019), the district court noted that "[n]either the Supreme Court nor the Eleventh Circuit has addressed whether Title VII preempts Title IX when a plaintiff is alleging employment discrimination and Title VII provides a parallel remedy." *Id*. at *20. Citing a litany of cases in support of its argument, Defendant contends that the prevailing view among district courts in the Eleventh Circuit is that Title VII preempts

Title IX in the area of employment discrimination. (Doc. 37, at 11-13). *See Heatherly*, 2018 WL 3439341, at *20[14]; *Lakoski v. James*, 66 F.3d 751, 753, 758 (5th Cir. 1995); *Hazel v. School Bd. of Dade Cnty.*, 7 F. Supp. 2d 1349, 1354 (S.D. Fla. 1998); *Blalock v. Dale County Bd. of Educ.*, 84 F. Supp. 2d 1291 (M.D. Ala. 1999); *Morris v. Wallace Cmty. College-Selma*, 125 F. Supp. 2d 1315, 1343 (S.D. Ala. 2001); *Gibson v. Hickman*, 2 F. Supp. 2d 1481, 1484 (M.D. Ga. 1998); *Drisin v. Fla. Int'l Univ. Bd. of Trustees*, No. 1:16-CV-24939, 2017 WL 3505299, at *5 (S.D. Fla. June 27, 2017), *report and recommendation adopted*, No. 16-CV-24939-CIV, 2017 WL 10398209 (S.D. Fla. Sept. 28, 2017); *Cooper v. Georgia Gwinnett Coll.*, No. 116CV01177, 2016 WL 6246888, at *6 (N.D. Ga. Sept. 16, 2016), *report and recommendation adopted*, No. 1:16-CV-1177, 2016 WL 6217124 (N.D. Ga. Oct. 25, 2016); *Reese v. Emory Univ.*, No. 1:14-CV-2222-SCJ, 2015 WL 13649300, at *5 (N.D. Ga. Jan. 29, 2015); *Torres v. Sch. Dist. of Manatee Cty., Fla.*, No. 8:14-CV-1021, 2014 WL 4185364, at *4 (M.D. Fla. Aug. 22, 2014); *Tompkins v. Barker*, No. 2:10-CV-1015, 2011 WL 3583413, at *5 (M.D. Ala. July 26, 2011), *report and recommendation adopted*, No. 2:10-CV-1015, 2011 WL 3584306 (M.D. Ala. Aug. 15, 2011); *Smedley v. Fulton Cty. Sch. Dist.*, No. 1:09-CV-1715, 2011 WL 13175900, at *3 (N.D. Ga. June 23, 2011); *Schultz v. Bd. of Trustees of Univ. of W. Fla.*, No. 3:06-CV-442, 2007 WL 1490714, at *3 (N.D. Fla. May 21, 2007); *Hankinson v. Thomas Cty. Sch. Dist.*, No. 6:04-CV-71, 2005 WL 6802243, at *2 (M.D. Ga. Oct. 28, 2005).

However, the cases relied upon by Defendant are distinguishable, as all of the cases cited by Defendant in support of Title VII preemption involve plaintiffs who are employees of educational institutions but are not also students. In *Sadeghian v. Univ. of S. Alabama*, No. CV 18-00009, 2018 WL 7106981 (S.D. Ala. Dec. 4, 2018), *report and recommendation adopted*, No. CV

---

[14] The court in *Heatherly* found it is unnecessary to make a ruling on the preemption issue because the parties agreed that the plaintiff's Title IX claim (even if not preempted) should be evaluated on the same basis as her Title VII claim. *Heatherly*, 2018 WL 3439341, at *21.

18-00009, 2019 WL 289818 (S.D. Ala. Jan. 22, 2019), the court noted that neither the Supreme

Court nor the Eleventh Circuit has addressed the issue of "whether Title VII preempts a Title IX

action for gender/sex discrimination asserted by a plaintiff who is *both a student and an employee*

of a federally funded educational program," and that district courts in the Eleventh Circuit "have

generally held that Title VII preempts a Title IX employment discrimination claim filed by a

plaintiff who is *solely an employee* (and not a student) of a federally funded educational institution

when Title VII provides a parallel remedy." *Id*. at *6 (emphasis in original).

Analyzing *Morrison v. Univ. of Miami*, No. 1:15-CV-23856, 2016 WL 3129490, at *5

(S.D. Fla. Jan. 20, 2016) and *Wilborn v. S. Union State Cmty. Coll.*, 720 F. Supp. 2d 1274, 1302-

04 (M.D. Ala. 2010),[15] the court concluded that because "a Title IX sex discrimination claim filed

---

[15] In discussing *Wilborn*, the court quoted the following passage:

> Wilborn's Title IX claims mirror those she raises pursuant to Title VII....
> Defendants argue that Wilborn's Title IX claims are preempted by Title VII....
>
> "Title IX prohibits sex discrimination by recipients of federal education funding."
> *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173, 125 S.Ct. 1497, 161
> L.Ed.2d 361 (2005).... The Supreme Court has "held that Title IX implies a private
> right of action ... [and] that it authorizes private parties to seek monetary damages
> for intentional violations of Title IX." Id. (citations omitted).
>
> Despite the broad language of Title IX, some circuit courts have held "that
> Congress intended Title VII to exclude a damage remedy under Title IX for
> individuals alleging employment discrimination." *Lakoski v. James*, 66 F.3d 751,
> 755 (5th Cir. 1995); *see also Delgado v. Stegall*, 367 F.3d 668, 670 (7th Cir. 2004)
> ("[S]exual harassment of university employees is not actionable under Title IX if
> the employee could obtain relief under Title VII."). In reaching this holding, the
> Fifth Circuit Court of Appeals accepted that, "[a]lthough phrased differently, both
> Title VII and Title IX protect individuals from employment discrimination on the
> basis of sex." *Lakoski*, 66 F.3d at 756. But the court also found that "the Title IX
> right to be free from sex discrimination in employment is no different from the Title
> VII right." *Id*. Thus, in most cases, an employment discrimination claim cognizable
> under Title IX could also be asserted under Title VII. Working from this finding,
> the court explained that if employment discrimination that violates Title VII could
> be asserted under Title IX, "a complainant could avoid most if not all of [Title VII's]
> detailed and specific provisions of ... law [and] ... could completely bypass the

by a plaintiff who is *both a student and an employee* of a federally funded educational program is materially different than a Title IX sex discrimination claim filed by a plaintiff who is *solely an employee* of the federally funded educational program," the plaintiff's claims under Title IX against the defendants for sex discrimination/sexual harassment and retaliation were not preempted by Title VII. *Id.* at *9-10 (emphasis in original). In reaching this conclusion, the court found persuasive the reasoning of other courts that determined that a student-employee's Title IX sex discrimination claim was not preempted by Title VII. *Id.* at *9. The court favorably cited the following cases: *Doe v. Mercy Catholic Med. Ctr.*, 850 F.3d 545, 549, 564 (3d Cir. 2017)

---

administrative process, which plays such a crucial role in the scheme established by Congress in Title VII." *Id.* at 755....

Although neither the Supreme Court nor the Eleventh Circuit Court of Appeals has directly addressed this issue, "various district courts within the Eleventh Circuit ... have [persuasively] held that Title VII preempts Title IX and provides the exclusive remedy for employment discrimination claims against federally funded education programs." *Schultz v. Bd. of Trustees of Univ. of West Florida*, 2007 WL 1490714 at *2 (N.D. Fla. May 21, 2007) (Smoak, J.) (citing *Hankinson v. Thomas County Sch. Dist.*, 2005 U.S. Dist. LEXIS 25576 (M.D. Ga. Oct. 28, 2005) (Lawson, J.); *Morris v. Wallace Cmty. College–Selma*, 125 F.Supp.2d 1315 (S.D. Ala. 2001) (Vollmer, J.); *Blalock v. Dale County Bd. of Educ.*, 84 F.Supp.2d 1291 (M.D. Ala. 1999) (DeMent, J.); *Hazel v. School Bd. of Dade County*, 7 F.Supp.2d 1349 (S.D. Fla. 1998) (Moore, J.); *Gibson v. Hickman*, 2 F.Supp.2d 1481, 1484 (M.D. Ga. 1998) (Owens, J.)).

This court, however, need not reach the preemption issue, as it finds that Wilborn's case is distinguishable from those cited above. Unlike the plaintiffs in those cases, all of whom were employees asserting claims against their employers, Wilborn is a student asserting claims against a federally funded education program. Moreover, although her Title VII and Title IX claims are based on the same set of facts, the latter set of claims clearly assert discrimination with respect to her education, not her employment. *Cf. Delgado v. Stegall*, 367 F.3d 668, 670 (7th Cir. 2004) ("We cannot find any cases dealing with the question but it seems to us that harassment of a student interferes with her educational experience whether or not she is also a part-time employee."). Unlike Title IX, Title VII provides no cause of action for discrimination that interferes with an individual's education, and thus cannot be read as preempting such a claim. For this reason, the court rejects defendants' preemption argument.

*Sadeghian*, 2018 WL 7106981, at *8 (quoting *Wilborn*, 720 F.Supp.2d at 1302-04).

(distinguishing *Lakoski* and holding that a medical resident could proceed with a private cause of action under Title IX for retaliation and *quid pro quo* harassment against a private hospital, stating that the issue of whether the plaintiff could also proceed under Title VII was "of no moment," as Congress provided a "variety of remedies, at times overlapping, to eradicate private-sector employment discrimination."); *Lipsett v. Univ. of Puerto Rico*, 864 F.2d 881, 897 (1st Cir. 1988) (which recognized a private Title IX cause of action by a medical resident in a university's medical residency program); and *Doe v. Prairie View A&M Univ.*, 2018 U.S. Dist. LEXIS 69757, *1, 2018 WL 1947804, *4 (S.D. Tex. Apr. 25, 2018) (finding *Lakoski* inapposite and holding that the plaintiff, who was a student and an employee in the research center, presented a "special case under Title IX;" that "[w]hen such a student endures sexual harassment in her job, she simultaneously experiences harms relating to her employment and to her education;" that "Title VII alone cannot remedy the full range of harms;" that the plaintiff was "at risk of being 'denied the benefits of ... [her] education program,' per 20 U.S.C. § 1681(a), in a way that the professor in *Lakoski* was not;" and that "[u]nlike Title IX, Title VII provides no cause of action for discrimination that interferes with an individual's education, and thus cannot be read as preempting such a claim."). *Id.*; *see also Bird v. University of Florida Bd. of Trustees*, No. 1:18-CV-221, 2019 WL 13087801, at *6 (N.D. Fla. Aug. 23, 2019) (the court, applying *Doe v. Mercy Catholic Medical Center* to a case involving a plaintiff who was filing a Title IX claim solely as an employee, found that Title VII did not preempt the plaintiff's Title IX claim, stating, among other things, that "Congress gave employees the right to sue under Title IX, *see Jackson*, 544 U.S. at 173, and '[i]t is thus Congress's prerogative—not [the courts']—to alter that course," *Doe*, 850 F.3d at 564).

In its reply brief, Defendant argue that the above-cited cases are not persuasive and states that *Doe v. Mercy Catholic Med. Ctr.*, 850 F.3d 545, "is commonly criticized because the cases used by the Third Circuit are distinguishable and a well-established private remedy already exists

under Title VII." (Doc. 45, at 11). Defendant argues that Title IX's implied private cause of action extends explicitly to employees of federally funded education programs who allege sex-based retaliation claims under Title IX and that the fact that the plaintiffs in the numerous court cases cited are not students is irrelevant. *Id*. at 12.

For purposes of deciding this issue on a motion to dismiss, the court finds the analysis in *Sadeghian* and the case authority cited therein to be persuasive, as it is factually closer to the allegations in the amended complaint. The principles articulated in those cases lead this court to conclude that Title VII does not preempt Plaintiff's Title IX claim, based upon the allegations before it. Discovery and further litigation will sharpen the facts in this case, clarifying the nature of the job that Plaintiff held, its relationship to her education, and other relevant considerations. Facts may be uncovered that weaken (or strengthen) her Title VII claim, her Title IX claim, or both.

## IV.    Conclusion

For the reasons stated above, it is hereby

ORDERED that Defendants' motions to dismiss (Docs. 6, 7) are DENIED WITHOUT PREJUDICE as moot and that Defendant's motion to dismiss (Doc. 37) is GRANTED in part and DENIED in part as set out above.

DONE, on this the 16th day of March, 2022.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge